[Civ. No. 45211. Second Dist.. Div. Two. July 9. 1975.]

NOLAN M. WILLIAMS, Plaintiff, Cross-defendant and Appellant, v.
TRAVELERS INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

## COUNSEL

George L. Vaughn, Jr., and Harold Rubinfeld for Plaintiff, Cross-defendant and Appellant.

Berger, Berger & Kahn and Anthony E. Shafton for Defendant, Cross-complainant and Respondent.

## OPINION

**FLEMING, Acting P. J.**—In January 1972 Nolan Williams sued the Travelers Insurance Company for $1,725,000 for its failure to pay a $25,000 policy of insurance on the life of his deceased infant son. By

subsequent amendment the amount of his claim was reduced to $25,000. Travelers cross-complained against Williams for damages for fraud in his application for insurance on the life of his son. In May 1974, the trial court struck Williams' complaint and entered his default on Travelers' cross-complaint for his failure to comply with pretrial discovery orders. Williams appeals.[1]

## BACKGROUND

In its answer and cross-complaint, Travelers asserted that in February 1971 Williams, a medical doctor specializing in radiology, applied for insurance on the life of his two-month-old son, and knew, but fraudulently failed to disclose, that his son suffered from a genetically transmitted disease known as Werdnig-Hoffman disease[2] from which a previous son had died a year earlier at the age of five months. Williams' second son died in Denmark two months after the application for a policy of insurance on his life.

In October 1973 Travelers served Williams with requests for admissions about the nature of Werdnig-Hoffman disease and its causal relationship to the death of his sons. Travelers also served interrogatories asking Williams to disclose his gross and net income and his assets and liabilities for the years 1969 to 1972 and to explain the basis for any denial of Travelers' requests for admissions. Thereafter Travelers filed motions to have its admissions deemed admitted and to compel answers to interrogatories. On 5 November 1973 Williams was ordered by the court to answer interrogatories. On 30 November 1973 Williams denied all requests for admissions and interrogatories about Werdnig-Hoffman disease on the ground he was not a specialist in the field. He failed to respond to interrogatories about his financial condition.

---

[1] Williams appeals the order striking his complaint and dismissing his suit against Travelers and striking his answer and entering his default on Travelers' cross-complaint. Technically, the appeal is premature. In cross-actions, appeal should be taken only after entry of a final judgment resolving all issues between the cross-complaining parties. (*Nicholson* v. *Henderson*, 25 Cal.2d 375, 381 [153 P.2d 945].) Entry of Williams' default on Travelers' cross-complaint ordinarily would not be considered a final judgment on the issues in that action. (*Trujillo* v. *Trujillo*, 71 Cal.App.2d 257 [162 P.2d 640].) However, the superior court file shows that for more than a year since entry of Williams' default on the cross-action Travelers has taken no action to obtain a judgment. For purposes of this appeal the cross-complaint is deemed abandoned.

[2] "[A] type of familial progressive spinal muscular atrophy, beginning in early life and ending fatally in from a few months to four years." (Dorland's Illus. Medical Dict. (24th ed.) p. 1097.)

On 12 April 1974 Travelers moved for sanctions for Williams' failure to properly answer interrogatories. On 22 April 1974 the trial court again ordered Williams to answer, no later than 15 May 1974, the interrogatories about his financial condition and those asking him to explain his denial of Travelers' allegations about Werdnig-Hoffman disease and its causal relationship to the death of his sons. The court also ordered Williams to pay Travelers $150 attorneys' fees as sanctions. On 15 May 1974, Williams furnished partially handwritten, unverified answers to interrogatories. On 17 May 1974 he served typewritten, verified amended answers, which denied all requests for admissions about Werdnig-Hoffman disease and the death of the sons on the ground that Williams was not an expert in the field and had no personal knowledge of the subject. He stated that "we will put you to your proof on all matters relating to this disease. At present we have no expert witness." Williams listed his income and expenses and his net assets for the requested years.

On 21 May 1974 the trial court ordered Williams to file further answers to interrogatories by 22 May 1974, with failure to file as "the basis to strike the complaint." Williams did not comply. On 23 May 1974, the court found that Williams' purported answers to interrogatories were sham, and that he had willfully failed to answer Travelers' interrogatories and had willfully violated the court's orders of 5 November 1973, 22 April 1974, and 21 May 1974 requiring him to file answers and pay attorneys' fees as sanctions. The court ordered Williams' complaint stricken and his action against Travelers dismissed, and it further ordered Williams' answer to the cross-complaint stricken and his default entered on Travelers' cross-complaint.

## DISCUSSION

Williams contends (1) he substantially complied with the trial court's discovery orders, and (2) the trial court abused its discretion in imposing its severest sanction for noncompliance.

1. ■ Williams failed to substantially comply with the trial court's discovery orders. He never adequately answered the interrogatories. In seeking to determine the basis for Williams' denial of Travelers' claims about Werdnig-Hoffman disease and the death of his sons, Travelers sought details for his contention that his sons did not die of Werdnig-Hoffman disease (*Tehachapi-Cummings County Water Dist.* v. *Superior Court*, 267 Cal.App.2d 42, 46 [72 Cal.Rptr. 589]); Williams answered that

he had no basis for denying the claims.[3] If Williams had grounds for objecting to these interrogatories, he should have presented them to the trial court in timely fashion. (*Coy* v. *Superior Court,* 58 Cal.2d 210, 222 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; Code Civ. Proc., § 2030, subd. (a).) Likewise Travelers sought details of Williams' personal financial condition, including his gross assets and liabilities, in order to establish its claim for punitive damages for fraud on the cross-complaint (*People* v. *Superior Court (Kardon),* 35 Cal.App.3d 710, 713 [111 Cal.Rptr. 14]). Williams answered with a statement of net assets only. Additionally, Williams never paid $150 in attorneys' fees imposed as sanctions for his initial six-month delay in answering Travelers' interrogatories.

■ The civil discovery statutes are intended "(1) to give greater assistance to the parties in ascertaining the truth and in checking and preventing perjury: (2) to provide an effective means of detecting and exposing false, fraudulent and sham claims and defenses; (3) to make available, in a simple, convenient and inexpensive way, facts which otherwise could not be proved except with great difficulty; (4) to educate the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements; (5) to expedite litigation; (6) to safeguard against surprise; (7) to prevent delay; (8) to simplify and narrow the issues; and, (9) to expedite and facilitate both preparation and trial." (*Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) Williams' equivocal and incomplete responses to Travelers' requests for discovery can only be viewed as attempts to frustrate rather than further these goals.

2. ■ The trial court did not abuse its discretion in imposing its severest sanction on Williams. (*Scherrer* v. *Plaza Marina Coml. Corp.,* 16 Cal.App.3d 520, 523-524 [94 Cal.Rptr. 85].) The superior court file, of which we take judicial notice, is replete with evidence of continuous use of obstructive tactics by Williams during earlier pretrial proceedings. With respect to answers to interrogatories, the court showed extreme liberality in giving Williams two additional opportunities to provide appropriate answers after he had failed to do so for an unexcused and unexplained six-month period. Williams then stretched the court's toleration of his conduct beyond the breaking point when he failed to provide further answers and failed to pay minimum sanctions for the

---

[3]Other documents filed in this case suggest that Williams in fact knew of evidence that might disprove Travelers' claims.

inconvenience caused by his delay. Williams' refusal to answer interrogatories that went to the heart of his claim against Travelers justified the dismissal of his complaint. (*Petersen* v. *City of Vallejo,* 259 Cal.App.2d 757, 784 [66 Cal.Rptr. 776].)

The judgment (order of dismissal) is affirmed. Costs to respondent.

Compton, J., and Beach, J., concurred.